No. 39,127

I. M. Mathis, *Appellee*, v. Public School District No. 103, Johnson County, Kansas, *Appellant*.

(264 P. 2d 1082)

Opinion filed December 12, 1953.

*Roy S. Lowe, George A. Lowe*, and *Roy Goins Lowe*, all of Olathe, were on the briefs for the appellant.

*Robert E. Fabian*, of Kansas City, argued the cause, and *John E. Blake, Bill E. Fabian*, and *Lawrence Cunningham*, all of Kansas City, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Parker, J.: This is an action to recover the balance claimed to be due a contractor for the digging and construction of a water well for a school district. Plaintiff recovered and the defendant appeals.

A preliminary review of the events giving rise to the lawsuit is necessary in order to insure a proper understanding of the issues involved on appellate review. This, based on facts about which

there can be no dispute, will be made in the form of a summarized statement without attempting to include everything disclosed by a long and tedious record.

On July 17, 1950, the parties entered into a written contract by the terms of which plaintiff agreed to dig defendant a water well, 10 feet in diameter and thirty-five feet deep, for an agreed price of $3,260. The agreement referred to contract documents designated as "general conditions," "specifications" and "drawing." In addition it contained provisions to the effect that the contractor was to secure and the owner to pay for the necessary materials; that the owner was to make progress payments on the 1st and 15th of each month in an amount equal to eighty-five percent of the work completed, payment for materials paid for by defendant to be deducted from the contract sum; that a schedule of prices upon which progress payments were to be based were to be set up before the work was started.

The specifications referred to in the contract provided, among other things, that the intent of the agreement was to provide a complete piece of work, notwithstanding every miscellaneous item necessarily involved, if not particularly mentioned; that the contractor should provide and pay for all materials, labor, water tools, equipment, power and transportation, and other facilities necessary for completion of the work; that the owner, without invalidating the contract, might order extra work or make changes by altering, adding to or deducting from the work, the value of which extra work or changes should be determined by estimates and acceptances in a lump sum before such work was started; that there should be no variations from the regular prices in the proposal; and that payments would be made on the basis of units set forth therein.

Subsequent to the execution of the contract and before the work was started a certain schedule of prices was set up as contemplated by both the master agreement and the specifications and, at least until sometime in October, 1950, progress payments were made to the contractor on the basis of unit prices therein set forth.

On October 26, 1950, when the well had been excavated to something under nineteen feet with a considerable showing of water, plaintiff and the duly elected officials of defendant's governing body met for the purpose of considering conditions existing with respect to the well and at that time, without discussing any change in the contract price, entered into a mutual oral understanding and

agreement, whereby the parties agreed it was not going to be necessary to dig the well to the depth specified in the original contract and that instead such well was to be completed at a less depth, to be later ascertained, with an increase in the diameter. Thereafter without any determination by estimates and acceptances, as contemplated by the contract, plaintiff proceeded with the construction of the well and subsequently with the consent and approval of the governing body of the district completed and turned it over to the defendant with dimensions of twenty feet in depth and twelve feet four inches in diameter.

Following the completion of the work the parties, who as we have heretofore indicated had not complied with the terms of the contract by reaching an understanding or agreement as to the lump sum to be paid for completion of the well in its changed form, disagreed as to the amount due and payable the contractor for performing that work. Plaintiff then brought this action to recover the sum of $1,239.97, which is conceded to be the amount that would have been due him, under the terms of the original contract, after deducting all progress payments theretofore made by defendant.

Extended reference to the pleadings would merely encumber and be of no value to this opinion. Highly summarized, it suffices to say that under their allegations issues were joined on the question whether, by reason of the parties' subsequent agreement, the original contract was modified as to dimensions only or was modified as to dimensions and contract price for completion of the well.

With issues joined as just indicated the cause came on for trial by jury in district court for the second time. After plaintiff had adduced his evidence defendant demurred thereto. When this demurrer was overruled defendant adduced its evidence. Thereupon, after denying defendant's request for a directed verdict, the court instructed the jury as to the law. Included in these instructions was instruction No. 5, which we pause to note was not objected to in the court below and is not now complained of, wherein the sole factual issue requiring decision by the jury was clearly outlined and defined. It reads:

"It is admitted by the parties that a written contract for the digging of the water well 10 feet in diameter and 35 feet deep and the installation of certain equipment for $3,260.00 was entered into by the parties, and that the parties verbally agreed to a modification of said contract and that the sole matter for your determination is whether plaintiff was to receive $3,260.00 under the contract as modified, or whether he was to receive $2,020.03.

"It is agreed by both parties that plaintiff has been paid $2,020.03, by the defendant paying him $1,221.37 and defendant paying $798.66 for materials used by plaintiff.

"If you find from a preponderance of the evidence that plaintiff was to receive $3,260.00 under the contract as modified then your verdict should be for plaintiff for the amount prayed for. However, if you do not so find then your verdict should be for the defendant."

After receiving instructions the jury retired to the jury room for deliberation. Eventually it determined the factual issue submitted against defendant, returning a verdict in favor of plaintiff for the full amount sued for, and was discharged. Defendant then filed its motion for new trial wherein it moved the court "to set aside the verdict rendered and the judgment entered thereon" on divers grounds not now important. When this motion was overruled it perfected the instant appeal by giving notice that it appealed from "the verdict and judgment of the court made and entered on December 10, 1952"; the order denying its motion for new trial; the order overruling its demurrer to plaintiff's evidence; and all other adverse orders and rulings.

At the outset, both in his brief and oral argument, appellee raises an issue which must be given first consideration. He points out, as it may be said our independent examination of the record discloses, that appellant has failed to assign or specify the overruling of his motion for new trial as error and insists that under such circumstances no question involved in that ruling is subject to appellate review. We are constrained to agree. Long ago this court announced the rule, to which it has consistently adhered, that where the overruling of a motion for a new trial is not specified as error, trial errors will not be reviewed. See, e. g., *Gas Co. v. Dooley*, 73 Kan. 758, 84 Pac. 719; *Brewer v. Harris*, 147 Kan. 197, 75 P. 2d 287; *Heniff v. Clausen*, 154 Kan. 717, 121 P. 2d 196; *Palmer v. Helmer*, 159 Kan. 647, 157 P. 2d 531; *Holmes v. Kalbach*, 173 Kan. 736, 742, 252 P. 2d 603; and numerous other decisions cited in Hatcher's Kansas Digest, Rev. Ed., Appeal & Error, § 181; West's Kansas Digest, Appeal & Error, § 719 (10).

Since it clearly appears from the record that all but two of the errors assigned in appellant's specifications of error, and for that matter in its statement of questions involved as set forth in the brief, are not reviewable because they relate to matters arising upon the trial of the cause we turn directly to the two questions entitled to appellate consideration. Both of these questions, the first being

that appellant's demurrer to the evidence should have been sustained and the second that it was error to overrule its motion for a directed verdict, challenge the evidence and involve the application of like rules in testing its sufficiency. Hence such questions may be considered together for, under our decisions evidence against which a defendant directs a motion for a directed verdict must be construed, as in the case of a demurrer, in the light most favorable to the plaintiff and against the defendant. (*Mosley v. Unruh,* 150 Kan. 469, 95 P. 2d 537; *Picou v. Kansas City Public Service Co.,* 156 Kan. 452, 461, 134 P. 2d 686; *Ripper v. City of Canton,* 166 Kan. 185, 187, 199 P. 2d 815; and cases there cited.)

Using the decisions heretofore cited and the principles therein announced, as a yardstick for measuring appellee's testimony in the light most favorable to him and giving it the benefit of all reasonable inferences to be drawn therefrom, can it be held the record discloses no substantial competent testimony to sustain the theory on which appellee bases his cause of action or the verdict by which the jury determined the single factual issue submitted to it under the trial court's unchallenged instruction heretofore quoted?

Based on evidence to which we shall presently refer we are convinced the foregoing question must be answered in the negative. The record, as we have previously pointed out, discloses that long after executing the original contract, at a time when there was still much to be done on the completion of the well, the parties entered into a subsequent mutual oral agreement substantially changing the conditions under which the well was to be completed without mentioning a modification of the original contract price and without thereafter making any attempt to comply with the specifications, which were a part of the contract, providing that in the event of a change by altering, adding to or deducting from the work the value of any such work or changes should be determined by estimates and acceptances in a lump sum before work on the changed improvement was started. Having done so and having gone on with and permitted the work to be completed pursuant to the oral agreement without having reached any agreement as to the price to be paid therefor we do not think it lies in the mouth of either party to say that the price to be paid for completion of the well was to be governed by any hard or fast provision to be found in the original contract. On the contrary, in the face of that situation, we think the most that either of the parties would be entitled to would be to

establish their intention at the time of entering into the oral agreement. This, since it cannot be denied the price was not expressly agreed upon, was a matter to be determined by the subsequent conduct and action of the parties in the light of all existing conditions and circumstances—a factual question which, in the event of failure to reach an agreement and subsequent litigation, was to be determined on the basis of evidence submitted to proper triers of fact. On this point resort to the record reveals, conceding so far as the request for a directed verdict is concerned that it was flatly denied and not all that might be desired, testimony on the part of the appellee in substance to the effect that progress payments, made while the work was being performed and issued by appellant, showed on their face that the contract price was still $3,260; also testimony, having to do with what took place at a business meeting of the board after the work had been completed when the appellee and most of the members of its governing body were present, which, so there may be no dispute or bickering as to its import, will be lifted verbatim from the record. It reads:

"Q. Will you relate the conversation between you and Mr. Voigts when he gave you this check? A. Mr. Voigts and Mr. Bob Stone, who was the clerk, was sitting close together facing me, and they gave me a check for two hundred and seventy-eight dollars and thirty cents, and I says, 'Now, what is the balance I have got coming on this job?' And they says, 'Twelve hundred and thirty-nine dollars and a few cents,' and I said, 'You repeat that again. I will just set that down on a piece of paper.'

"Mr. George Lowe: If the Court please, who said this? A. Well, I said that to Mr. Bob Stone and to Mr. Voigts. That was my conversation to them, and they said, 'Twelve hundred, thirty-nine dollars and a few cents.'

"Q. (By Mr. Fabian) All right, and after you said, 'I will set that down on a piece of paper,' what if anything did either of these gentlemen say? A. They never said a word.

"Q. What did you say after that? A. Well, I didn't say much either. I was very much upset.

"Q. Did any other members of the board say anything on this January the 19th meeting? A. Yes, sir. Mr. Rybolt says, 'We will see you quick and settle up with you a little later on.' "

In the light of the foregoing testimony, giving it the benefit of all inferences to which it may be entitled under the rule, it is asking too much of this court to say, in fact it cannot be said, there is no substantial evidence of record to sustain the appellee's claim the original contract was modified as to dimensions only and that so modified he was entitled to recover the amount sued for as the balance due

him for digging and completing appellant a water well in conformity with the terms of the oral agreement. It necessarily follows the trial court did not err in overruling the demurrer to the evidence or in refusing to direct a verdict in favor of the appellant. In this jurisdiction the rule (For informative purposes, see West's Kansas Digest, Appeal & Error, §§ 987 to 1005, Incl.; Hatcher's Kansas Digest, Rev. Ed., Appeal & Error, §§ 488 to 509, Incl.) so well established that citation of the decisions supporting it is neither necessary nor required, is that when the record discloses a factual controversy, such as is here involved, it is the province of the trial court and not the court of appellate review to determine it.

One other contention advanced by appellant requires attention. It is claimed the journal entry of judgment attached to the notice of appeal shows mere acceptance of the verdict by the trial court and hence does not constitute an approval thereof. Be that as it may, the record does disclose that the motion for new trial states that appellant moved to set aside the verdict rendered and "the judgment entered thereon"; that one of the grounds of such motion is that "the verdict is in whole or in part contrary to the law and evidence"; that the motion for new trial, containing practically all of the grounds recognized by our statute, was passed on and overruled by the trial court; that the notice of appeal recites appellant was appealing from the verdict "and judgment of the court made and entered on December 10, 1952"; and such record fails to affirmatively show anything tending to establish that the trial court did not approve the verdict. In that situation, appellant's contention on this point lacks merit and cannot be upheld.

In conclusion, it should perhaps be added, that even though the state of the record precludes review of any questions arising upon the trial of the cause, we have given consideration to arguments advanced by appellant respecting trial errors relied on as grounds for the granting of the motion for new trial and are convinced that, under the confronting facts and circumstances of the instant case, none of the trial errors complained of would warrant a reversal of the judgment.

The judgment is affirmed.